[No. 15130.  Department One.  May 12, 1919.]

F. R. KNIGHT *et al., Respondents,* v. P. C. ELLSWORTH, *Appellant.*[1]

WORK AND LABOR (5, 14)—AGREEMENT—EVIDENCE. An agreement for the operation of defendant's chicken ranch of fifteen acres on the basis of an equal division of the profits was orally modified where defendant acquired large tracts adjoining and developed the same into a model farm at great expense under an understanding that plaintiff should be paid for superintending the work.

SAME (15)—AMOUNT OF RECOVERY. In such a case, the plaintiff's concurrent salary as superintendent should be fixed in view of his want of experience as a farm superintendent and his interest in the chicken business from which he expected large profits.

Appeal from a judgment of the superior court for King county, M. H. Van Nuys, Esq., judge *pro tempore,* entered May 25, 1918, upon findings in favor of the plaintiffs, after an accounting, in an action for wages, tried to the court. Modified.

*J. E. McGrew (E. E. Shields,* of counsel), for appellant.

*Ned Roney,* for respondents.

MACKINTOSH, J.—The respondent, a carpenter, and the appellant, a retired lawyer, in June, 1914, entered into an agreement for the operation of a fifteen-acre chicken ranch on Vashon Island, in King county, having in contemplation the equal division of the prospective profits. After two years of operation, the appellant is in possession of a farm of eighty-nine acres, and has made expenditures of over $70,000 in connection with the venture; the respondent has contributed twenty-four months of continuous effort, and jointly they are interested in this lawsuit.

[1]Reported in 181 Pac. 22.

The agreement provided that the appellant was to lease to the respondent fifteen acres for the term of one year, and to furnish with the premises certain personal property; the respondent agreed to work and cultivate the premises and provide one-half the feed, attend to the feeding and raising of chickens, and gen-·erally to take care of the fifteen acres. The two parties were to share jointly in the profits, and the agreement was to be extended from year to year so long as the parties mutually agreed thereon. After having operated for several weeks under this agreement, the appellant purchased thirty-five acres adjoining the fifteen original acres, which had been merely surface cleared. In the spring of 1915, twenty more acres were purchased by the appellant adjoining that already acquired, this property being logged-off land. Later, other lands, some purchased and some leased, were added to the appellant's property until he had under cultivation eighty-nine acres. An immense amount of work was done in the clearing of this land and placing it in usable shape; stumps were blasted, rocks removed, ditches were dug; some twenty buildings were built upon the property, most of them upon the original fifteen acres; many of them were new and some were alterations of older buildings. They consisted of a house, barn, sheds, coops, pits, pens, chicken houses and chicken brooders; the property was fenced and generally put in first-class condition.

During the two years of operation, from five to twenty-five men were constantly employed about the place. Many of the buildings constructed were erected to be used only in connection with the chicken venture. At the end of two years, it was demonstrated that there were to be no profits in connection with that phase of the activities; and the respondent

began this action, claiming wages from the appellant for the twenty-four months that he had, as he claimed, acted as the respondent's superintendent; his claim being that, as new land was added to the original fifteen acres, it was not used for the purpose of extending the chicken business, but was stocked as a model farm, and that the respondent rendered services upon this farm that were not included in the terms of his original contract, and claims that the original contract was modified by a subsequent oral agreement whereby the respondent was to act as superintendent and overseer in the development of the larger farm, for which he was to receive a reasonable wage.

The appellant claims that all the land purchased and leased, as well as the improvements made thereon, were made for the purpose of enlarging and improving the chicken business, and that, by oral agreement, the terms of the written contract were extended to cover all these additional expenses, and that the contract was made to apply to all the subsequently acquired lands. Appellant further claims that the respondent worked the place as a whole, and that he was liable for the farm work on the place, as provided by the written contract, and claims that, after allowing the respondent one-half of the small production of the farm, the respondent is liable for one-half of the net loss. Respondent is also indebted, it is claimed, to the appellant for money advanced for his personal use, and that that indebtedness of the respondent vastly exceeds any sum that might be due on account of his services. The appellant concedes that all the permanent improvements placed upon the property during the entire period are properly chargeable to him.

The trial court, after taking an accounting, found in favor of the respondent in the sum of $2,626.80.

From this judgment, the appellant prosecutes this appeal.

The statement of facts in this case, covering several hundred pages, is filled with the examination of witnesses in regard to various items of expense as they appear in the books of appellant, who was the one who kept the accounts, he paying out all moneys upon checks or orders issued by the respondent. There are hundreds upon hundreds of items of account, and the examination of the records and exhibits in this case involved a task which counsel in their briefs mildly describe as Herculean. The farm developed from the original chicken ranch into what has been properly described as a model farm. An immense amount of labor was expended in the transition, and there has been no segregation of the work which was performed upon the original fifteen acres and upon the various other tracts; crops were raised, but the proceeds were not segregated as to the point of their origin; sheep and hogs were raised and slaughtered without separate record; the time of the men employed upon the various buildings was not segregated as to the building where the work was performed; the respondent boarded the men and their board is commingled with the other accounts in the case—the whole record is in a seemingly hopeless tangle. The respondent himself, answering the question: "Did you keep an account of what work was done on the fifteen acres," said, "No, sir; I did not keep any separate account of that work."

The evidence of the respondent tending to establish a subsequent oral agreement, modifying the original written contract, is comprised in conversations which he relates he had with the appellant, wherein the appellant is alleged to have said to him: "Fred, these

buildings must be put up. Hire men and put them up. I do not ask any man to work for me for nothing; I am too independent." Later on, in another conversation in regard to the clearing of the land, the appellant said: "Fred, that is charged to the property; it could not be charged to anything else. You go ahead; this work all has to be done, I will see that you get yours. I don't want any man to work for me for nothing." Still later on, it is alleged, the respondent said to the appellant: "This is not the chicken business; this is not in my contract;" and the appellant is alleged to have replied: "Fred, this has to be done. Go ahead and do it. I don't want any man to work for me for nothing; I am too independent."

The appellant denies having entered into any such oral modification of the original contract, and produces evidence of a mortgage given by the respondent to the appellant which tends to establish that the respondent had no idea that the appellant was to be indebted to him for wages; but, weighing all of the testimony, we are satisfied that the trial court was correct in determining that the relation between the parties was modified from that established by the written contract, and that, while the parties were still jointly interested in the chicken venture, the appellant was responsible (as he admits) for the expense of the permanent improvements, and that he should be held responsible to the respondent for a fair compensation for his services in superintending the work on the lands acquired in addition to the original fifteen acres. The respondent admits that, under his contract, he was to "raise chickens and work the fifteen acres." He again said, "the work on the fifteen acres should be charged to me." He then testifies in answer to the question, "Did you keep any separate accounting on

the time expended on the permanent improvements and on the fifteen acres, and what you raised on the fifteen acres?'' ''No, I never did keep any separate time on that.'' The respondent not having kept any books of account, of course, is of very little assistance in determining what items are properly chargeable to the different accounts, and the appellant himself, while on the stand, was not able to explain the multitude of items which he had charged on his books to the different accounts. The special judge who tried this case has extracted, by an infinitude of patience, from the seemingly hopeless confusion, an account which he has embodied in his findings and conclusion, which appears to be supported by the evidence in the record. It is as nearly exact as the circumstances of the case permit, and with it we must be and are satisfied, with this one exception: The respondent has been allowed in the accounting salary as superintendent at the rate of $156 per month for practically nine months of the time, and at the rate of $202 for fifteen months. It seems to us that, in view of the fact that the respondent was not an experienced farm superintendent, and the further fact that he was simultaneously interested in a venture which, although it proved finally disastrous, was entered into with the expectation of leading to fortune, could not have been permitted to enjoy not only the expectation of profit in the chicken business but also a concurrent salary as large as that awarded him by the trial court. In our view of the facts, we think the salary allowance should have been reduced by the sum of $1,671, leaving a balance due to the respondent of $955.80, for which judgment may be entered. Both parties will pay their own costs.

CHADWICK, C. J., MAIN, TOLMAN, and MITCHELL, JJ., concur.